Mark E. Stamelos, (SBN: 208472)
*mstamelos@fordharrison.com*
FORD & HARRISON, LLP
150 3rd Avenue South, Suite 2010
Nashville, TN 37201
Telephone: 615-574-6704
Facsimile: 615-574-6701

MARK S. POSARD (SBN: 208790)
mposard@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825
Telephone: (415) 875-3343
Facsimile: (916) 920-4402

AYA J. DEAM (SBN: 227720)
adeam@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5033
Facsimile: (213) 680-4470

Attorneys for Plaintiff,
NORTHERN CALIFORNIA JUNIOR
LACROSSE ASSOCIATION

CAROLEE G. KILDUFF, (SBN: 107232)
ckilduff@akk-law.com
ANGELO, KILDAY & KILDUFF, LLP
601 University Avenue, Suite 150
Sacramento, CA 95825
Telephone: (916) 564-6100
Facsimile: (916) 564-6263

Attorneys for Defendant
LAURA JENNINGS

JOINT CASE MANAGEMENT STATEMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA JUNIOR LACROSSE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>LAURA JENNINGS, an individual, and DOES 1-50,<br><br>Defendants. | CASE NO.  3:22-cv-02206-JSC<br>[Assigned for all purposes<br>Hon. Jacqueline S. Corley – Courtroom 8]<br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Action Filed:   April 8, 2022<br>Trial Date:      TBD |

Plaintiff Northern California Junior Lacrosse Association ("NCJLA" or "Plaintiff") and Defendant Laura Jennings ("Jennings" or "Defendant") (collectively with Plaintiff herein as the "Parties") to the above-entitled action respectfully submit this Joint Case Management Statement.

**I.      JURISDICTION & SERVICE**

All parties have been served and appeared in this case.  NCJLA contends that this Court has original jurisdiction over this action because this action arises under Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and related common law claims.  This Court has subject matter jurisdiction over the matters pleaded herein under 28 U.S.C. §§ 1331, 1367(a).  All other claims for relief under various statutory and/or common laws are within the supplemental jurisdiction of this Court under 29 U.S.C. § 1367(a) because they are so related to NCJLA's DTSA claim that they form part of the same case or controversy under Article III of the United States Constitution.  NCJLA's other claims "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004).   Jurisdiction is thus appropriate for all of NCJLA's claims that are

transactionally related to the federal claim.

Defendant Laura Jennings contends all of Plaintiff's claims and most of her anticipated counterclaims are subject to arbitration pursuant to her Employment Agreement, and has filed a motion to compel arbitration, and dismiss this action.

## II.     FACTS OF THE CASE

### A.     Plaintiff's Statement

Jennings is the former Executive Director for NCJLA, which arranges, organizes, promotes, and administers youth lacrosse leagues and competitions for hundreds of adolescent participants across California. At the time of her resignation, Jennings was responsible for league administration, team registration, conference scheduling, overseeing business operations, delegating tasks to NCJLA staff, preparing event calendars, communicating with NCJLA Board members and officers, promoting league events using NCJLA social media accounts, preparing monthly operation reports on key projects, overseeing Boys' and Girls' Directors, communicating with local media, customers, clubs, engaging in fiscal management in partnership with NCJLA staff, managing events with third parties, among other duties.

During the course of Jennings's employment with NCJLA, Jennings had access to NCJLA's confidential and proprietary business information (hereafter "Trade Secrets"). Such information included, internal administrative guides and forms, coach and client satisfaction surveys, club and third party contact lists and mailing addresses, NCJLA safety protocols, NCJLA business processes and data flow information, planned workshops and upcoming NCJLA event information, NCJLA commissions' information, among other proprietary documents.

In an effort to protect its Trade Secrets, NCJLA required Jennings to sign a Non-Disclosure Agreement ("NDA") which contractually obligated Jennings to maintain the secrecy of NCJLA's Trade Secrets, and directly prohibited the use of

NCJLA's Trade Secrets for use by others for their own personal benefit, or to the detriment of NCJLA.

While still under the employ of NCJLA, and without NCJLA's knowledge, Jennings willfully and intentionally emailed herself over 30 data files containing NCJLA's confidential business information, including but not limited to, NCJLA's Trade Secrets. Jennings knew her actions were improper, because Jennings immediately attempted to hide evidence of her misappropriation by deleting the outgoing emails from her sent folder.

Soon thereafter, Jennings resigned from her position as Executive Director. As a short background, the COVID-19 pandemic had a significant impact on NCJLA's operations, revenue and the ability to pay the salaries of its three employees. In response, NCJLA reduced the salaries for all its employees, not just Jennings, and provided each employee with an Employment Agreement with reduced pay due to COVID-19. An audio recording of the Board Meeting where the Parties discussed the reasons for the reductions are clear, unequivocal, and supported by detailed budgetary discussions. The audio recording also shows that Jennings objected to the salary reduction and that she was unsure if she wanted to continue her employment. At no point in the recording did NCJLA terminate her employment. Moreover, at no point during the Board Meeting discussing Jennings' salary, or her responsibilities, did she complain or raise any concern about any alleged wrongful conduct engaged by NCJLA. Such allegations of wrongful conduct were only asserted by Jennings after NJLCA served her with a Cease-and-Desist Letter for misappropriating NCJLA's confidential information and trade secrets.

However, Jennings improper actions did not stop upon her resignation. After misappropriating original copies of NCJLA's confidential business information through her private email address, Jennings, without NCJLA's knowledge or consent, improperly copied, shared, altered data access, and then permanently deleted, vital

NCJLA business information, including but not limited to, its Trade Secrets. The unauthorized alteration and deletion of NCJLA's data directly from NCJLA's Google drive, included internal administrative guides and forms, coach and client satisfaction surveys, club and third party contact lists and mailing addresses, NCJLA safety protocols, NCJLA business processes and data flow documents, planned workshops and upcoming NCJLA event information, NCJLA board member meeting minutes, among other data files.

Thereafter, Jennings changed and/or altered NCJLA passwords to existing NCJLA's business and social media accounts, locking out access to NCJLA's Board of Directors, and tied recovery of said passwords to her personal phone device, which NCJLA could not access. As a result of Jennings's actions, and despite attempts by NCJLA to retrieve access to its accounts from Jennings, NCJLA could not perform integral parts of its day-to-day business operations. To date, NCJLA still does not have access to its Facebook social media account.

Within two months of her resignation from NCJLA, and despite moving across the country to New Jersey, Jennings joined a new youth lacrosse league in Northern California as the Executive Director to compete against NCJLA, wherein she directly solicited, and continues to solicit, member clubs away from NCJLA, using information improperly taken from NCJLA.

On information and belief, Jennings used and continues to use, NJCLA's Trade Secrets and proprietary information to directly compete with NCJLA through her new position as Executive Director at a competing lacrosse organization. Jennings's misappropriation, and new position at a competing organization, poses direct and immediate harm to NCJLA's ongoing business operations.

Further, in an effort to further damage NCJLA, Jennings used false pretenses to bind NCJLA to contracts with third-party vendors despite having no agency or authorization to do so. On information and belief, Jennings used NCJLA credentials

on NCJLA business accounts to bind NCJLA into rental agreements with third-party vendors without NCJLA consent, which resulted in charges being owed by NCJLA, all of which occurred months after Jennings resigned from NCJLA. NCJLA is informed and believes that Jennings performed these tasks for the benefit of competing lacrosse organizations, wherein she took a position that directly competed with NCJLA, as an Executive Director.

NCJLA now brings the instant action seeking damages, temporary injunctive relief, and permanent injunctive relief, based on Jennings's violation of her duty of loyalty and fiduciary duty to NCJLA, her continued possession and unlawful use of NCJLA's Trade Secret information, her breach of contract regarding disclosure of NCJLA's Trade Secrets and other confidential information, her improper usurpation of NCJLA's contractual and economic relationships with its member clubs, her destruction of NCJLA data, and her fraudulent use of NCJLA's credentials to bind NCJLA to contracts with third party vendors.

Of note, NCJLA makes a general denial of Jennings' new claims for alleged whistleblower retaliation under the False Claims Act, FEHA retaliation, harassment, and any other additional claims she intends to bring after already filing three separate claims with the Labor Commissioner. Notably, Jennings resigned in November 2021 by a way of a letter in which she stated that she had enjoyed serving as the executive director and thanked the organization, and the individual she worked with, for the opportunity to work there. In her letter, Jennings confirmed that the sole reason for her resignation was dissatisfaction with her compensation. Indeed, Jennings expressed an interest in continuing a relationship with NCJLA if it were to renegotiate the compensation structure and offered, alternatively, to act as an independent contractor. Nothing in her resignation letter mentioned or identified any claims of harassment or other accusations.

## B.   Defendant's Statement

Laura Jennings has been playing, coaching and officiating at lacrosse games since she was a young girl. She has worked tirelessly to promote lacrosse and has dedicated her professional career to efforts to ensure that youth who are interested have an opportunity to play the game.

Beginning in September 2013 she was asked to serve on the Board of Directors for Plaintiff, Northern California Junior Lacrosse Association, (NCJLA) a non-profit association comprised of various club lacrosse teams. In July 2016 she was asked to take over as board secretary after the person in that role, current board member Jin Peavey, had a disagreement with the board president and stopped coming to meetings. In January 2017 Laura Jennings was asked, in addition to her responsibilities as board secretary, to take over the executive director position after the person in that role abandoned the job and ceased communications with the board. Laura Jennings worked as a consultant/independent contractor in the executive director role until September 2017 when she was offered the position as an employee for $49,200/year, plus expenses and a discretionary bonus.  She accepted, and pursuant to a written employment agreement, served as executive director until November 12, 2021, when her contract was summarily terminated by NCJLA, despite the fact that she had done an excellent job.  In September 2018 she had received an outstanding performance review. In December 2018 she was given a raise to $60,000/year and a bonus. In September 2019 she received another outstanding performance review. She also received the discretionary bonus in December 2019. In August 2020 she received an excellent review and discretionary bonus.

In August 2020, an in-house investigation found Laura Jennings had been subjected to a hostile work environment on the basis of gender in part because NCJLA lacked personnel policies, including anti-discrimination and harassment policies. As part of the remedy, the Board agreed that an employee handbook would

be developed by September 30, 2020. Although Laura Jennings frequently requested the policies be put in place, nothing was done.

In June 2020, NCJLA was given a Payroll Protection Plan loan, purportedly to pay employee salaries, although one of the three listed "employees" was actually misclassified and being treated as an independent contractor by NCJLA. In December 2020 all three employees of NCJLA were furloughed because of COVID-19.  After the first PPP loan was forgiven, NCJLA applied for a second PPP loan in February 2021 while the employees were still on furlough. The misclassified employee complained to Laura Jennings, and Laura Jennings began complaining to Board members that this employee had been unable to receive unemployment because of the misclassification.

Laura Jennings was brought back to work half time in March 2021, and full time in August 2021. She continued to complain about the lack of personnel policies and the misclassification.

Because NCJLA had elected to refund team registrations in 2020, and was not requiring fees in 2021, it was eventually short on cash. There were discussions about converting the employees to contractor status and allowing them to work for/with Focus on the Field to make up for lost income.  Instead, and without discussing options with the employees as they had requested, on October 1, 2021, in a breach of her employment contract, the board unilaterally reduced Laura Jennings' compensation from $60,000 to $45,000/year with no reduction in work assignments. When she objected to working extra hours without compensation the board retaliated by terminating all employee contracts. Later, Laura Jennings was told by a board member attending the meetings that the board was tired of all the complaints, and just wanted to clean house.

On November 12, 2021, board president Kyle Kennedy, and two other board members had a Zoom meeting with Laura Jennings and informed her that her

employment agreement was terminated. She was offered a new contract at the reduced salary, zero expense reimbursement and no bonus. She requested a few days to consider the offer during which she continued to work for NCJLA performing executive director duties.  On November 17, 2021 she informed the board via email and attached letter that she was not accepting their offer, but would be interested in participating in further discussions as to job descriptions, salaries and agreements. Kyle Kennedy immediately removed her access to email and the NCJLA computer network, including all personal information on her NCJLA laptop. On November 20, 2021, he sent an email thanking her for her service and saying he would reach out to her to coordinate transition items for operation of her position, such as computer passwords and account information, which she would have willingly furnished.  He never did. Instead, on December 9, 2021, he had his attorneys send a letter wrongfully accusing her of criminal conduct and violation of computer fraud and trade secret statutes. These accusations, which mirror the allegations of Plaintiff's First Amended Complaint, are entirely false and designed to destroy Laura Jennings' reputation in the lacrosse community, and prevent her from working in the industry.

 Four days after Laura Jennings made a demand via correspondence from counsel that NCJLA pay unpaid wages to which she is entitled under the Labor Code, this lawsuit was filed. The lawsuit is in retaliation for Defendant's complaints about violation of statutes and mismanagement of the organization. She denies all allegations of improper conduct. All actions were for the benefit the organization, or to preserve evidence and documentation germane to her own claims against NCJLA. She has not disclosed any trade secret information if any exists, which is doubtful. She has repeatedly requested, pursuant to her employment contract, that NCJLA mediate matters in dispute, and if unsuccessful, arbitrate those matters. To that end, Defendant has stipulated to and requested an early settlement conference. By way of a motion before the Court she has requested that the Court compel arbitration and

dismiss this action if the settlement conference is unsuccessful.

### III. LEGAL ISSUES

The list is preliminary and not exclusive. The Parties anticipate that more issues will be identified as this matter progresses. The disputed points of law include:

- Plaintiff asserts claims against Defendant for alleged (1) Breach of Contract, (2) Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 28 U.S.C. §§ 1836, et seq., (3) Breach of Fiduciary Duty, (4) Breach of Duty of Loyalty, (5) Tortious Interference with Prospective Economic Advantage, (6) Intentional Interference with Prospective Economic Advantage, (7) Violation of the Computer Fraud and Abuse Act, (8) Trespass to Chattel, (9) Conversion, (10) Unfair Competition in Violation of California Business and Professions Code §§ 17200, et seq.

- Whether arbitration is within the scope of the agreement for this dispute. *Howard v. Goldbloom* (2018) 30 Cal.App.5th 659.  Plaintiff asserts its claims, which relate to confidential and proprietary information, arise under a separate contract, the NDA, that superseded Jennings' Employment Agreement regarding the claims at issue.  Based on the plain language of the Parties separate agreement, Plaintiff's asserts its claims fall outside the scope of the Employment Agreement and the arbitration agreement contain therein.

- Defendant anticipates counterclaims against NCJLA for defamation, retaliation under FEHA, whistleblower retaliation under the False Claims Act, retaliation under the California Labor Code, to the extent not included in her pending administrative claims, breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices under California Business and Professions Code 17200.

- Whether any of the documents listed by Plaintiff are entitled to trade secret protection.

## IV. MOTIONS

Defendant filed a Motion to Compel Arbitration on June 22, 2022. (*See* Dkt. No. 15.) Plaintiff has since filed its Opposition on July 6, 2022. (*See* Dkt. No. 18.) Defendant filed her Reply on July 11, 2022. (*See* Dkt. No. 19.) On July 28, 2022, the court held the motion in abeyance. (*See* Dkt. No. 24.)

## V. AMENDMENT OF PLEADINGS

Plaintiff filed a first amended complaint on May 9, 2022. The Parties have not met and conferred to agree on a deadline that is appropriate for each party to amend its pleadings or add new parties.

## VI. EVIDENCE PRESERVATION

While Plaintiff's counsel has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, the Parties have not met and conferred regarding steps taken to preserve evidence relevant to issues reasonably evident in this action, pending Defendant's Motion to Compel Arbitration set to be heard on July 28, 2022 with this Court.

## VII. DISCLOSURES

To date, the Parties have not made initial disclosures pending Defendant's Motion to Compel Arbitration. Both parties have made preliminary disclosures in preparation for the settlement conference.

## VIII. RELATED CASES

Defendant filed a Retaliation Complaint against Plaintiff with the California Department of Industrial Relations ("DLSE") on November 22, 2021. Thereafter, Defendant filed another claim for unpaid wages with the DLSE for which Plaintiff was served on May 5, 2022. Defendant filed a second Retaliation Complaint against Plaintiff with the DLSE on approximately July 6, 2022.

## IX. SUMMARY OF RELIEF SOUGHT

### A. Plaintiff's Statement

Plaintiff seeks (1) compensatory, exemplary, and punitive damages, plus pre-judgment and post-judgment interest at the maximum legal rate; (2) costs, expenses and reasonable attorneys' incurred in this action;  (3) for an injunction against Defendant, prohibiting her from contacting and/or soliciting all Plaintiff's member clubs, compelling her to submit to a forensic inspection to uncover the extent of Defendant's misappropriation of its trade secrets and her improper solicitation of former and exiting Plaintiff's customers, enjoining her from using any of Plaintiff's confidential information, enjoining Wine Country Lacrosse League (current employer for Defendant and direct competitor of Plaintiff) from engaging with any current or former Plaintiff's member clubs, and enjoining Wine Country Lacrosse League from utilizing information derived from Plaintiff's trade secrets, indefinitely; and (4) for all such other and further relief as the Court deems just and proper.

### B. Defendant's Statement

Defendant seeks compensatory damages, damages for lost wages and benefits, emotional distress damages, punitive damages and attorneys' fees.

## X. SETTLEMENT AND ADR

The Parties participated in a second session of the settlement conference with Magistrate Judge Kandis A. Westmore on February 8, 2023.  The Parties continued settlement efforts with the assistance of Judge Westmore following  the second settlement conference and reached a settlement.

The Parties executed a settlement agreement on September 22, 2023, which includes monetary and non-monetary obligations.  The NCJLA has complied with all non-monetary terms of this agreement.

The NCJLA has submitted to Ms. Jennings 93% of the settlement sum.  There remains 7% of the settlement payment outstanding, due to other expenses unforeseen

by the NCJLA. (A confidentiality provision in the agreement prohibits disclosure of the settlement amount and therefore the Parties may not include reference to dollar amounts in this statement.)  The NCJLA anticipates the entire settlement sum will have been paid by the time of this Status Conference.

## XI. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties have not consented to a magistrate judge for this matter. However, the Parties consented to Magistrate Judge Kandis A. Westmore for the limited purpose of a settlement conference per the court's order on July 28, 2022 referring the case to a randomly-assigned magistrate judge for a settlement conference.

## XII. OTHER REFERENCES

The Parties have addressed their positions with respect to binding arbitration via Defendant's Motion to Compel Arbitration, Plaintiff's Opposition, and Defendant's Reply.

## XIII. NARROWING OF ISSUES

None at this time.

## XIV. EXPEDITED TRIAL PROCEDURE

None at this time.

## XV. SCHEDULING AND TRIAL

To date, the Parties have not met and conferred to discuss scheduling or trial dates pending Defendant's Motion to Compel Arbitration hearing.

## XVI. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

None at this time.

## XVII. PROFESSIONAL CONDUCT

Counsel for both parties have reviewed the Guidelines for Professional

Conduct for the Northern District of California.

## XVIII. OTHER

The Parties request a further stay pending the outcome of settlement negotiations by means of Judge Westmore.

Dated:  September 20, 2023	Respectfully submitted,

By: */s/ Mark Stamelos*
    Mark Stamelos

    FORD & HARRISON LLP
    Attorneys for Plaintiff
     NORTHERN CALIFORNIA JUNIOR
     LACROSSE ASSOCIATION

Dated:  September 20, 2023	By: */s/ Aya J. Deam*
    Mark S. Posard
    Aya J. Dean

    GORDON REES SCULLY
    MANSUKHANI, LLP
    Attorneys for Plaintiff
    NORTHERN CALIFORNIA JUNIOR
    LACROSSE ASSOCIATION

Dated:  September 20, 2023	By: */s/ Carolee G. Kilduff*
    Carolee G. Kilduff

    ANGELO, KILDAY & KILDUFF, LLP
    Attorneys for Defendant
     LAURA JENNINGS

JOINT CASE MANAGEMENT STATEMENT